# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2018, 6:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Teresa K. Hollandsworth
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of
Parental Rights of

A.S.O. & A.D. (minor children)

and

A.O. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner.*

February 5, 2018

Court of Appeals Case No.
45A03-1708-JT-1758

Appeal from the Lake Superior
Court

The Honorable Thomas P.
Stefaniak, Jr., Judge

Trial Court Cause Nos.
45D06-1408-JT-201
45D06-1408-JT-202

**Mathias, Judge.**

[1] The Lake Superior Court terminated A.O.'s ("Mother") parental rights to her two minor children, A.S.O. and A.D. Mother appeals and raises two issues, which we restate as:

> I. Whether clear and convincing evidence supports the trial court's judgment terminating Mother's parental rights, and
>
> II. Whether Mother received a fundamentally fair trial.

We affirm.

## Facts and Procedural History

[2] Mother has two children, A.S.O., born in August 2006, and A.D., born in April 2010. The children have different biological fathers.[1] In September 2010, the Indiana Department of Child Services ("DCS") removed the children from Mother's care because her home was uninhabitable and did not have running water. In November 2010, a dispositional hearing was held. Mother and the children's fathers were ordered to participate in numerous services.

[3] Mother complied with the court-ordered services, and on June 1, 2013, the children were returned to her care for a trial home visit. On some date between June 2013 and March 2014, Mother became homeless again. Mother sent the children to their respective father's homes without notifying DCS.

---

[1] The children's fathers' parental rights were also terminated. Neither father participates in this appeal.

[4] The children were removed from Mother's care for a second time in April 2014 due to her continued instability and the fact that the children were not living with Mother. Mother continued to participate in services. However, she also moved from place to place and failed to obtain a stable residence.

[5] Thereafter, the DCS filed a petition to terminate Mother's parental rights on August 21, 2014. However, the trial court adopted a case plan of reunification with Mother. One year later, after a review hearing, the court adopted a permanency plan of termination of parental rights, and Mother's visitation with the children was restricted to telephonic visitation. Mother was referred to Edgewater Systems for intensive services.

[6] Additional review hearings were held on December 16, 2015, September 30, 2016, and January 23, 2017. It appears that this case continued without resolution throughout 2016 because DCS and the trial court believed that it might be possible to place A.S.O. with her biological father. And DCS continued to offer services to Mother throughout the proceedings. On the date of the September 30 hearing, Mother was living with a friend, and DCS was ordered to conduct a home visit at that residence. After the January 2017 review hearing, the trial court adopted a permanency plan of termination of Mother's parental rights and adoption by A.S.O.'s and A.D.'s foster parent. The court also suspended A.S.O.'s visits with her father.

[7] The fact-finding hearing was held on May 17, 2017. Mother, A.S.O's father, and the children's therapists testified. The trial court found that after seven

years of services, Mother continues to struggle with housing instability. Although Mother participated in services, she did not benefit from them. Mother failed to demonstrate "an ability to independently parent the children and provide necessary care, support and supervision." Appellant's App. p. 18.

[8] Mother admitted that she continues to struggle with homelessness. But approximately three weeks before the fact-finding hearing, Mother obtained housing through a homeless program that will pay her housing and utilities for a year. Mother was not employed and stated that she is unable to work because she suffers from bipolar disorder.

[9] A.S.O's therapist believes that the child suffers from trauma, in part, due to the failed reunification attempts with Mother, and she needs permanency. The therapist testified that Mother is too inconsistent to parent A.S.O. The therapist did not recommend reunification with Mother. A.D., who has mild autism, has been removed from Mother for most of his life. He also requires consistency and structure that Mother cannot provide. Both children reside together in their pre-adoptive foster home. The trial court found that the children need permanency, and Mother has been offered seven years of services without progress toward reunification.

[10] On May 31, 2017, the trial court issued an order terminating Mother's parental rights to A.S.O. and A.D. Mother now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

[11] We have often noted that the purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for the termination of such rights when parents are unable or unwilling to meet their responsibility as parents. *Id.* Indeed, a parent's interest must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.,* 904 N.E.2d 1257, 1259 (Ind. 2009).

[12] The termination of parental rights is controlled by Indiana Code section 31–35–2–4(b)(2), which provides that a petition to terminate parental rights must allege:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child

being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[13] The burden is on DCS to prove each element by clear and convincing evidence. Ind. Code § 31–37–14–2; *G.Y.*, 904 N.E.2d at 1261. If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. I.C. § 31–35–2–8(a). If the court does not find that the allegations in the petition are true, it shall dismiss the petition. *Id.* at § 8(b).

[14] When we review a trial court's findings of fact and conclusions of law in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family*

*& Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

### A. Factual Findings

[15] Before we address whether the DCS presented evidence sufficient to meet the requirements of the termination statute, we address Mother's challenges to certain factual findings.[2] First, Mother argues that the trial court's findings that she was inconsistent with services are not supported by the evidence. We agree with Mother that she consistently participated in services, and to the extent the trial court's findings state that she did not, the findings are not supported by the evidence. However, DCS did present evidence that Mother failed to benefit from those services.

[16] Mother also challenges the trial court's findings that she failed to establish stable, suitable housing because she obtained housing three weeks before the fact-finding hearing and will be allowed to remain in her current housing for one year. But Mother failed to maintain stable housing throughout the seven-

---

[2] Mother argues that certain findings concerning the children's fathers are not supported by the evidence. Because neither of the children's fathers have appealed the termination of their parental rights, we do not address those arguments.

year history of the child in need of services (CHINS) and termination proceedings. Therefore, the trial court's findings with regard to Mother's homelessness and lack of stable housing are supported by the evidence.

Mother also argues that the evidence is insufficient to support the finding that she struggles with her mental health. Mother observes that she receives psychological and psychiatric treatment and was only recently diagnosed with bipolar disorder. Mother testified that she is compliant with her medication. Mother is taking steps to address her mental health, but there is also evidence that she has historically struggled with her mental health. She reported "suicidal ideation" in November 2015, suffers from depression, and had a nervous breakdown in the spring of 2016. Tr. pp. 28, 35; Ex. Vol., Ex. EE, p. 26. This evidence supports the trial court's finding concerning Mother's mental health.

### B. Conditions that Resulted in Removal

We now turn to Mother's argument that the DCS failed to prove the statutory elements enumerated in the termination statute. Indiana Code section 31–35–2–4(b)(2)(B) is written in the disjunctive; therefore, the trial court is required to find that only one prong of that subsection has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). Although the trial court found that both prongs had been proven, we consider only whether clear and convincing evidence supports the trial court's conclusion that "[t]here is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied." Ind. Code § 31–35–2–4(b)(2)(B)(i).

[19] When we review this determination, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, we must determine what conditions led to the child's removal. *Id.* And then we consider "'whether there is a reasonable probability that those conditions will not be remedied.'" *Id.* (quoting *In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010)). The trial court must evaluate a parent's fitness at the time of the termination hearing, taking into consideration evidence of changed conditions and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *Id.*

[20] The children were removed from Mother's home in September 2010 because the home was uninhabitable and Mother and A.D.'s father were being evicted. Mother was receiving government assistance at the time, but was unable to maintain stable housing. Throughout the CHINS and termination proceedings, Mother was either homeless or lived in various homes of friends and relatives. The children were returned to Mother's care for a trial home visit in June 2013, but Mother became homeless again shortly thereafter. Mother never maintained a stable home between the children's removal in September 2010 and the fact-finding hearing in May 2017.

[21] Mother argues that she now has stable housing, which she obtained three weeks before the fact-finding hearing. However, she may only remain in that housing for a year. Mother hopes she will be able to support herself with social security disability payments, but her application was not approved at the time of the

hearing. She claims that she will get a job if her social security application is not approved. Mother failed to present any evidence that would support the conclusion that she can maintain employment.

[22] DCS also provided Mother with services to assist her in maintaining a stable home for her children. Mother failed "to utilize the available services and make the necessary efforts to remedy" her housing instability. Appellant's App. p. 18. After the 2013 trial home visit failed because Mother lost her home again, DCS offered additional services and intensified its efforts, but Mother was unable to benefit from the additional assistance. This evidence supports the trial court's finding that Mother's historical inability to provide a stable home for her children leads to the conclusion that "it is unlikely that [she] will ever be in a position to properly parent these children." *Id*. For these reasons, we conclude that the DCS presented clear and convincing evidence to prove that "there is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied." I.C. § 31-35-2-4(b)(2)(B).

### C. Best Interests

[23] Mother also argues that the DCS failed to prove that termination of her parental rights was in the children's best interests. In determining the best interests of a child, the court is required to look beyond the factors identified by DCS and to consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In doing so, "the trial court must subordinate the interests of the parent to those of the child." *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App.

2013). The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id*. Recommendations of the case manager and CASA, in addition to evidence that the conditions resulting in removal will not be remedied or that the parent-child relationship poses a threat to child's well-being, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id*.

[24] Mother loves her children and has an established bond with her oldest child, A.S.O. But sadly, she is unable to parent her children and provide them with a stable home. The children are placed in the same foster home, which is a pre-adoptive placement. They are bonded to each other and their foster family. The children's therapists believe that termination of Mother's parental rights is in their best interests because Mother is inconsistent and cannot provide stability for the children. Tr. pp. 133, 141. A.S.O's therapist believes that the child suffers from trauma, in part, due to the failed reunification attempts. After seven years, the children need stability and a permanent home. For these reasons, we conclude that the trial court's finding that termination of Mother's parental rights is in the children's best interests is supported by clear and convincing evidence.

## Fundamentally Fair Trial

[25] Mother also argues that her trial counsel provided "ineffective assistance such that Mother did not receive a fundamentally fair trial whose facts demonstrate

an accurate determination."[3] Appellant's Br. at 16. In *Baker v. Marion County Office of Family and Children*, 810 N.E.2d 1035 (Ind. 2004), our supreme court held that

> [w]here parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Id.* at 1041. Therefore, we consider whether counsel's performance was so defective as to undermine our confidence in the trial court's termination decision. *See In re A.P.*, 882 N.E.2d 799, 806 (Ind. Ct. App. 2008) (holding that termination counsel did not provide ineffective assistance where parent received a fundamentally fair trial where the facts demonstrated an accurate determination and the court could say with confidence that DCS adequately proved its case).

---

[3] Indiana provides counsel to indigent parents in termination proceedings, rather than "incur the time and money to litigate eligibility for public counsel in each case." *Baker v. Marion Cty. Office of Family and Children*, 810 N.E.2d 1035, 1038 (Ind. 2004); *see also* Ind. Code § 31–32–4–1 ("The following persons are entitled to be represented by counsel ... (2) A parent, in a proceeding to terminate the parent-child relationship, as provided by IC 31–32–2–5"); Ind. Code § 31–32–2–5 ("A parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship.").

[26] First, Mother claims that trial counsel should have objected because the same magistrate who presided over certain CHINS proceedings prepared the CHINS petitions in September 2010 when he was a DCS attorney, and Mother was never advised of the conflict. Magistrate Gruett prepared the CHINS petitions, but he did not appear at the CHINS hearing. As a magistrate, he signed the December 2015, September 2016, and January 2017 review hearing orders.[4] There is no evidence in the record that the magistrate recalled drafting the CHINS petition in this case. Moreover, the termination petitions were filed in August 2014, well before Magistrate Gruett presided over the review hearings. And the magistrate did not preside over the termination fact-finding and did not participate in the judgment terminating Mother's parental rights. For this reason, the fact that Magistrate Gruett prepared the CHINS petitions five years before he presided over a review hearing does not undermine our confidence in the outcome of the termination proceedings.

[27] Next, Mother argues that she was denied counsel until after the review hearing held on September 30, 2016. In fact, Mother was advised of her right to counsel at the initial CHINS detention hearing, she waived her right to counsel, and proceeded pro se. Appellant's App. p. 32. She cannot now complain that her decision to waive her right to counsel rendered the CHINS and termination proceedings fundamentally unfair. *See C.T. v. Marion Cty. Dep't of Child Servs.*,

---

[4] It also appears that Magistrate Gruett signed the August 2015 review order, but the signature is not entirely legible.

896 N.E.2d 571, 588 (Ind. Ct. App. 2008) ("Error invited by the complaining party is not reversible error."), *trans. denied*. Importantly, Mother had counsel prior to and during the termination fact-finding hearing.

[28] Thirdly, Mother claims that counsel should have argued that Mother's due process rights were violated because the CHINS detention hearing was held seven days after the children were removed, which is contrary to the statute requiring a hearing not later than forty-eight hours, excluding weekend days and holidays. But the date the children were actually removed from Mother is not entirely clear on the record before us. The hearing was held on September 27, 2010, and from the documents in the record, the children were removed on either September 21, 23, or 27, 2010. Regardless, Mother has not demonstrated that this possible error had any effect on the factual determination in this case concerning whether her parental rights were properly terminated.

[29] Finally, Mother argues that counsel should have filed a motion to dismiss because DCS failed to comply with a February 5, 2014 order directing DCS to dismiss the CHINS proceedings once Mother completed her parenting class. In February 2014, the children were on a trial home visit with Mother. However, they were removed from Mother's care when she became homeless once again. The welfare of the children was the key factor to determine whether the CHINS proceedings would be dismissed. Mother was unable to provide housing and care for her children shortly after she completed the parenting class. Therefore, she was not entitled to dismissal of the CHINS proceedings.

To determine whether Mother's trial was fundamentally fair, we do not focus on counsel's errors but whether an accurate determination was made. The evidence in this case supports the trial court's decision that terminating Mother's parental rights was in the children's best interests, and none of the alleged errors undermines our confidence in the trial court's termination decision.

## Conclusion

Clear and convincing evidence supports the trial court's decision terminating Mother's parental rights to her two children, and she has not established that the termination proceedings were fundamentally unfair.

Affirmed.

Najam, J., and Barnes, J., concur.